No. 100,494

STATE OF KANSAS, *Appellee*, v. JOSHUA B. COMAN, *Appellant*.

(273 P.3d 701)

Opinion filed March 30, 2012.

*Catherine A. Zigtema*, of Maughan & Maughan LC, of Wichita, argued the cause, and *Carl F.A. Maughan*, of the same firm, was with her on the briefs for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, were with him on the brief for appellee.

The opinion of the court was delivered by

Johnson, J.: Joshua Coman pled guilty to misdemeanor criminal sodomy, as defined in K.S.A. 21-3505(a)(1), based upon an incident with a dog. The Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.*, requires registration for those who commit sexually violent crimes. KORA's definition provision, K.S.A. 22-4902, includes a list of crimes that are per se "sexually violent crimes," *i.e.*, crimes which always require KORA registration. But the list, under K.S.A. 22-4902(c)(4), only includes felony criminal sodomy as defined in K.S.A. 22-4902(a)(2) and (3), and omits the misdemeanor criminal sodomy for which Coman was convicted. Nevertheless, in addition to specifically named crimes, the list includes a catch-all provision under K.S.A. 22-4902(c)(14), which requires registration for those committing sexually motivated acts. The district court found that Coman was required to register because the act giving rise to his conviction for the unlisted version of criminal sodomy was sexually motivated. Coman appealed, and a divided Court of Appeals panel affirmed the district court's registration order. *State v. Coman*, 42 Kan. App. 2d 592, 214 P.3d 1198 (2009). We granted review. Construing the applicable statute as a whole, we hold that the legislature did not intend to include the acts constituting the sex crime defined in K.S.A. 21-3505(a)(1) to be included within the catch-all provisions of K.S.A. 22-4902(c)(14). Accordingly, we reverse both the Court of Appeals and the district court.

### FACTUAL AND PROCEDURAL OVERVIEW

Coman had previously been a roommate of Diana Sells, who had a Rottweiler dog. Sells discovered Coman in her garage with the dog in a compromising position. Coman told Sells that he loved

the dog and wanted to see it one more time. Sells called the police, who discovered personal lubricant in Coman's pocket. Coman admitted to the officers that he used the lubricant to penetrate the dog's vagina with his finger.

Ultimately, Coman pled guilty to one count of criminal sodomy as defined in K.S.A. 21-3505(a)(1), a class B misdemeanor. In the process of sentencing Coman, the district court found that Coman's acts supporting the conviction were sexually motivated and that, pursuant to K.S.A. 22-4902(c)(14), Coman was required to register under KORA.

Coman appealed to the Court of Appeals, stating in his notice of appeal that he was appealing "from the sentence imposed" and specifically describing the subject matter of the appeal as being "that part of the Sentence which requires this Defendant to register as a sex offender, pursuant to the Kansas Sex Offender Registration Act." But in briefing the case, Coman raised two issues: (1) The KORA should not be construed to require him to register as a sexually violent offender; and (2) the crime of criminal sodomy described in K.S.A. 21-3505(a)(1) violates both the United States and the Kansas Constitutions.

The Court of Appeals declined to consider the merits of Coman's constitutional challenge to K.S.A. 21-3505(a)(1) because of multiple procedural bars. The panel pointed out that the notice of appeal stated that Coman was only appealing his sentence, not his conviction. Further, Coman pled guilty to the crime, which waives any defects or irregularities in the proceedings, including those of constitutional dimension. Finally, the panel opined that Coman's failure to move to withdraw his guilty plea precluded him from seeking relief from his conviction for the first time on appeal. *Coman*, 42 Kan. App. 2d at 594.

With respect to the registration issue, a majority of the Court of Appeals panel found no ambiguity in K.S.A. 22-4902. Rather, it construed the catch-all provision of subsection (c)(14) to mean that any sexually motivated act may render a crime sexually violent, regardless of whether the committed crime has been specifically omitted from the list of per se sexually violent crimes in another subsection of the statute. The majority believed that omitting a

crime from the per se list simply meant that no registration was required for the omitted crime without the additional showing of sexual motivation. Moreover, the majority opined that to hold otherwise and exclude unlisted sex crimes from the provisions of subsection (c)(14) would render that catch-all provision meaningless. 42 Kan. App. 2d at 597-99.

Even though the majority found no ambiguity in the registration statute, it discussed the rule of lenity. That rule provides that any reasonable doubt as to the meaning of a criminal statute is resolved in favor of the accused. But the majority declared that the rule of lenity may not be invoked where there is a reasonable and sensible judicial interpretation of the statutory provision that will effect legislative design. 42 Kan. App. 2d at 597.

The dissent agreed that the language of subsection (c)(14) could be read, as the majority did, to include Coman's conduct because it was a sexually motivated act. But the dissent noted that reading subsection (c)(14) to include sex crimes that were not listed as automatically requiring registration would render the list superfluous. The apparent suggestion is that, given that all sex crimes are sexually motivated, applying the sexually motivated act definition of subsection (c)(14) to all sex crimes renders the per se list meaningless because registration will always be required for sex crimes, whether listed or unlisted. The dissent pointed out that, in applying canons of statutory construction, courts should read each section of a statute as adding new meaning, rather than reading a subsequent provision as being redundant to a prior provision. 42 Kan. App. 2d at 603 (Leben, J., dissenting).

Further, the dissent noted that the maxim, *expressio unius est exclusio alterius,* should be applied to the text of the registration statute. Courts apply that maxim to presume that when the legislature includes specific items in a statutory list, it intends to exclude similar items not expressly listed. In this instance, the dissent opined that the legislature meant something when it included two of the three subsections of the sodomy statute in the per se list, but excluded the third version of the crime. The dissent bolstered that view by observing that one manner in which to commit the crime that was omitted from the list of sexually violent crimes, *i.e.,*

K.S.A. 21-3505(a)(1), is to engage in consensual gay sex which is in no way inherently violent. Likewise, the dissent noted that no other subsection in the K.S.A. 22-4902(c) list of per se sexually violent crimes divided a crime between included and omitted ways in which to commit the crime, *i.e.*, criminal sodomy was singled out for special treatment. 42 Kan. App. 2d at 603-04 (Leben, J., dissenting).

The dissent then embarked on an extensive review of the lengthy and sometimes convoluted legislative history of the registration statute, concluding that the legislature might well have intended the catch-all provision to apply only to nonsex crimes. Its review of case precedent uncovered nothing to refute that interpretation. Ultimately, the dissent determined that the legislature specifically intended to exclude the K.S.A. 21-3505(a)(1) version of criminal sodomy from the registration requirement of K.S.A. 22-4902(c)(4) and that the rule of lenity will not permit the general catch-all provision of subsection (c)(14) to override that exclusion. 42 Kan. App. 2d at 604-07 (Leben, J., dissenting).

Coman petitioned for review, ostensibly raising three issues: (1) whether the court erred in requiring Coman to register as a sex offender; (2) whether the court erred in applying the rule of lenity and the rules of statutory construction; and (3) whether the court erred in determining the appellant's constitutional challenge. We take the liberty of consolidating the first two issues and considering the third issue first.

## CONSTITUTIONALITY OF CRIMINAL SODOMY STATUTE

Sodomy is defined in K.S.A. 21-3501(2) to mean oral contact with genitalia; anal penetration by any body part or object; or "oral or anal copulation or sexual intercourse between a person and an animal." Sexual intercourse is defined as "any penetration of the female sex organ by a finger, the male sex organ or any object." K.S.A. 21-3501(1). Under K.S.A. 3505(a)(1), the misdemeanor version of criminal sodomy is defined as "[s]odomy between persons who are 16 or more years of age and members of the same sex or between a person and an animal." In other words, the statutory

provision under which Coman was convicted proscribes consensual homosexual conduct, as well as bestiality.

In *Lawrence v. Texas*, 539 U.S. 558, 574, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003), the United States Supreme Court struck down a sodomy law as unconstitutional under the Equal Protection Clause, finding that a state cannot criminalize sexual practices between two mutually consenting adults conducted in private, even if those practices are common to a homosexual lifestyle. The *Lawrence* Court explicitly narrowed its holding and warned against any broader interpretation. 539 U.S. at 578. Nevertheless, Coman would have us read *Lawrence* as prohibiting states from legislating for moral purposes, which he believes includes prohibition of bestiality.

As noted, the Court of Appeals declined to reach the merits of the constitutional argument because of procedural bars. Coman's review petition does not address the panel's decision on the procedural matters, opting instead to argue the merits of the undecided issue. We will review the issue as it was decided by the Court of Appeals, *i.e.*, whether the statute's constitutionality is properly before the appellate courts.

*Standard of Review*

Ordinarily, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007). More fundamentally, the existence of jurisdiction is a question of law over which this court's scope of review is unlimited. *State v. Denney*, 283 Kan. 781, 787, 156 P.3d 1275 (2007).

*Analysis*

In his petition for review, Coman identifies the remedy he seeks for the unconstitutionality of K.S.A. 21-3505(a)(1) as being the reversal of his conviction. But Coman's notice of appeal did not even suggest that he was challenging his conviction. To the contrary, the notice identified the subject matter of the appeal as the *sentence* imposed, and more specifically, that part of the sentence requiring him to register under KORA.

"It is a fundamental proposition of Kansas appellate procedure that an appellate court obtains jurisdiction over the rulings identified in the notice of appeal." *State v. Huff*, 278 Kan. 214, Syl. ¶ 2, 92 P.3d 604 (2004); see also K.S.A. 60-2103(b) (notice of appeal "shall designate the judgment or part thereof appealed from"). Although our appellate courts have, at times, liberally construed a notice of appeal to retain jurisdiction, one simply cannot construe a notice that appellant is appealing his or her sentence to mean that he or she is appealing the conviction.

Coman is likewise harnessed with the consequences of having pled guilty to violating the statute that he now wants to invalidate. A defendant who enters into a guilty plea " 'is deemed to have waived any irregularities which may have occurred in the proceedings prior thereto.' " *State v. Woodward*, 288 Kan. 297, 304, 202 P.3d 15 (2009) (quoting *Jones v. State*, 207 Kan. 622, 625, 485 P.2d 1349 [1971]). The waiver exists even if such defects "may reach constitutional dimensions." *State v. Melton*, 207 Kan. 700, 713, 486 P.2d 1361 (1971). More generally, K.S.A. 22-3602(a) specifically prohibits any direct appeal "by the defendant from a judgment of conviction before a district judge upon a plea of guilty." Moreover, we recently held that a guilty plea without a subsequent motion to withdraw the plea in the district court deprives Kansas appellate courts of jurisdiction. *State v. Hall*, 292 Kan. 862, 868, 257 P.3d 263 (2011).

Finally, to the extent that K.S.A. 21-3505(a)(1) may be unconstitutional under the narrow holding in *Lawrence* because it makes private homosexual conduct by two consenting adults a crime, Coman lacks standing to make that argument. He was charged under that portion of the statute proscribing bestiality, *i.e.*, having sex with an animal that is arguably incapable of giving consent, rather than under that portion of the statute criminalizing human homosexual conduct. See *Ulster County Court v. Allen*, 442 U.S. 140, 155, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979) ("if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations"); *State v. Thompson*, 221 Kan. 165, 172, 558 P.2d 1079 (1976) (holding that "unconstitu-

tional governmental action can only be challenged by a person directly affected and such a challenge cannot be made by invoking the rights of others").

In short, the Court of Appeals appropriately declined to consider Coman's first-time-on-appeal challenge to the constitutionality of K.S.A. 21-3505(a)(1) as applied to the bestiality charges leveled against him. We likewise refuse to reach the merits.

KORA REGISTRATION FOR MISDEMEANOR CRIMINAL SODOMY

Pursuant to K.S.A. 22-4904, a provision of KORA, an offender has a duty to register with the county sheriff under specified circumstances. To determine what "offender" means for KORA registration purposes, one looks to the definitions in K.S.A. 22-4902. Accordingly, our task is to determine whether Coman fits within the statutory definition of "offender," which will, by necessity, require us to interpret and reconcile the applicable statutory provisions of K.S.A. 22-4902.

*Standard of Review*

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

*Analysis*

As we have indicated, K.S.A. 21-3505 lists three forms of criminal sodomy:

"(a) Criminal sodomy is:
(1) Sodomy between persons who are 16 or more years of age and members of the same sex or *between a person and an animal*;
(2) Sodomy with a child who is 14 or more years of age but less than 16 years of age; or
(3) causing a child 14 or more years of age but less than 16 years of age to engage in sodomy with any person or animal." (Emphasis added.)

Coman was convicted under the above-emphasized bestiality proscription of subsection (a)(1), albeit for registration purposes, KORA does not differentiate between the two ways in which a person can commit criminal sodomy under that subsection. The KORA does, however, specifically differentiate between persons

who are convicted of subsection (a)(1) criminal sodomy and those who violate the other two subsections of K.S.A. 21-3505. Accordingly, we begin by reciting the relevant portions of K.S.A. 22-4902:

"(a) 'Offender' means: (1) A sex offender as defined in subsection (b);

. . . .

(5) any person convicted of any of the following criminal sexual conduct if one of the parties involved is less than 18 years of age:

. . . .

(B) criminal sodomy as defined by subsection (a)(1) of K.S.A. 21-3505, and amendments thereto;

. . . .

"(b) 'Sex offender' includes any person who, after the effective date of this act, is convicted of any sexual violent crime set forth in subsection (c) . . . .

"(c) 'Sexually violent crime' means:

. . . .

(4) criminal sodomy as defined in subsection (a)(2) and (a)(3) of K.S.A. 21-3505 and amendments thereto;

. . . .

(14) any act which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated. As used in this subparagraph, 'sexually motivated' means that one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification."

We frequently declare that the most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Arnett*, 290 Kan. at 47. An appellate court's first attempt to ascertain legislative intent is through an analysis of the language employed, giving ordinary words their ordinary meaning. *State v. Urban*, 291 Kan. 214, 216, 239 P.2d 837 (2010). If a statute is plain and unambiguous, an appellate court does not need to speculate further about legislative intent and, likewise, the court need not resort to canons of statutory construction or legislative history. 291 Kan. at 216.

The Court of Appeals majority found no ambiguity in the language the legislature used in the catch-all provision of subsection (c)(14). It points to the provision's plain language requiring KORA registration if the court, at sentencing, finds beyond a reasonable doubt that any act by the defendant in committing the crime had as one of its purposes the sexual gratification of the defendant.

There is no stated exception, such as an exemption for sex crimes omitted from the list of per se sexually violent crimes. *Coman*, 42 Kan. App. 2d at 597. We agree with that assessment of the statutory language.

Yet, even crystal clear language cannot always save a statutory provision from the specter of ambiguity. See *State v. Horn*, 288 Kan. 690, 692, 206 P.3d 526 (2009) (conundrum arising not from lack of clarity in statutory language, but from existence of two apparently controlling but conflicting statutes). Even the Court of Appeals majority, citing to *State v. Valladarez*, 288 Kan. 671, 678-79, 206 P.3d 879 (2009), acknowledged that ambiguity can arise because "various statutes are in conflict," and that in such an event "the canons of statutory construction must be applied and legislative history may be consulted for indications of legislative intent." *Coman*, 42 Kan. App. 2d at 595.

Here, the potential conflict is contained within the same statute, triggering the concept that, when construing a legislative act to determine the legislature's intent, courts should avoid isolating any particular provision. Rather, an act should be construed as a whole. In that vein, the reviewing court must consider the various provisions of an act in pari materia with a view to reconciling and bringing the provisions into workable harmony, if possible. See *State v. Breedlove*, 285 Kan. 1006, 1015, 179 P.3d 1115 (2008).

All concerned in this case have concentrated their attention on the possible conflict between subsection (c)(4) and (c)(14) of K.S.A. 22-4902. Subsection (c)(4) defines sexually violent crime as including criminal sodomy as set forth in K.S.A. 21-3505(a)(2) and (a)(3). Conspicuously absent from that definition of a sexually violent crime is the misdemeanor version of criminal sodomy defined in K.S.A. 21-3505(a)(1). As the Court of Appeals dissent noted, criminal sodomy is the only crime in K.S.A. 22-4902(c)'s list of sexually violent crimes that omits a version of the offense. Considering that special treatment, the general statutory structure, and the maxim, *expressio unius est exclusio alterius*, one is left with no reasonable doubt that the legislature intentionally omitted misdemeanor criminal sodomy from subsection (c)(4). See *Coman*, 42

Kan. App. 2d at 604 (Leben, J., dissenting). What may be unclear is the reason for the omission.

The panel majority believes that the legislative intent in omitting misdemeanor criminal sodomy from subsection (c)(4) "reflects the belief that not *every* violation of K.S.A. 21-3505(a)(1) should be considered sexually violent, but that a violation of that statute *could* be considered to be sexually violent if the facts of the offense meet the general definition in subsection (c)(14)." 42 Kan. App. 2d at 597. That facially seductive argument quickly evaporates when one attempts to construct a scenario in which a person could commit criminal sodomy under K.S.A. 21-3505(a)(1) without falling within the sexually motivated catch-all provision. As subsection (c)(14) is written, an offense is sexually violent if only *one* of the purposes for the defendant's acts, not necessarily the principal purpose, is for the defendant's sexual gratification. It is counterintuitive to believe that the legislature went to the trouble of constructing a unique, bifurcated provision in subsection (c)(4) simply to eliminate the registration requirement for the rare, if not nonexistent, circumstance where a person has sex with an animal or with a person of the same sex without at least one of the purposes being sexual self-gratification.

When viewed in that light, it is not the catch-all provision that is emasculated, as the panel majority suggests. That provision remains viable and useful for unlisted, nonsex crimes. Rather, the majority's interpretation renders the omission of misdemeanor criminal sodomy in subsection (c)(4) virtually meaningless and useless, because the very act of committing the omitted crime brings the actor within the broadly cast net of the (c)(14) catch-all. See *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006) (courts presume legislature does not intend to enact useless or meaningless legislation).

Although the Court of Appeals only discussed the legislature's *omission* of misdemeanor criminal sodomy from the list of per se sexually violent crimes in subsection (c), the legislature also specifically listed misdemeanor criminal sodomy in another subsection of K.S.A. 22-4902. We have already discussed that an "offender" who must register includes a "sex offender as defined in subsection

(b)," and that subsection (b) sends us to subsection (c) to determine the meaning of "sexually violent crime." However, subsection (a) also defines other persons who must register as an "offender." Specifically, K.S.A. 22-4902(a)(5) requires registration for any person convicted of certain listed criminal sexual conduct if one of the parties involved is less than 18 years of age, and one of those listed crimes is "criminal sodomy as defined by subsection (a)(1) of K.S.A. 21-3505." K.S.A. 22-4902(a)(5)(B).

In other words, when the legislature directly addressed misdemeanor criminal sodomy, it made registration dependent upon the age of the participants, rather than upon the sexual motivation of the defendant. Adopting the panel majority's interpretation that a defendant committing misdemeanor criminal sodomy must register under subsection (c)(14) upon a finding of sexual motivation would truly render superfluous the explicit provisions of K.S.A. 22-4902(a)(5)(B). Why carve out a registration requirement where the victim is age 16 or 17, if the catch-all provision is intended to pull in all sexually motivated defendants anyway?

As evidenced by the extensive discussion in the Court of Appeals dissent, the legislative history of the registration statute does not resolve the ambiguities. On the one hand, the fact that the legislature deleted a list of nonsex crimes and added the catch-all provision could indicate that the legislature intended the catch-all to apply only to nonsex crimes. *Coman*, 42 Kan. App. 2d at 606 (Leben, J., dissenting). That is the use to which it has been employed by the precedent the majority found persuasive. See *State v. Chambers*, 36 Kan. App. 2d 228, 240, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006) (theft and burglary sexually motivated); *State v. Patterson*, 25 Kan. App. 2d 245, 251, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998) (burglary and theft of woman's underwear sexually motivated); *State v. Lopez*, 25 Kan. App. 2d 777, 778, 973 P.2d 802 (1998), *rev. denied* 266 Kan. 1113 (1999) (attempted aggravated burglary with intent to commit sexual battery sexually motivated); *State v. Stenger*, No. 96,182, 2007 WL 1530118, at *4 (Kan. App. 2007) (unpublished opinion) (furnishing alcoholic beverages to minor for illicit purposes sexually motivated); *State v. Ward*, No. 89,659, 2004 WL 324214, at *2-3 (Kan. App. 2004) (unpublished

opinion) (criminal threat sexually motivated); *State v. Saunders*, No. 91,136, 2004 WL 2160942, at *3 (Kan. App. 2004) (unpublished opinion) (criminal threat, child endangerment, and battery sexually motivated).

On the other hand, the legislature also removed all misdemeanors from the list of crimes, at the same time as the catch-all provision was added to the precursor of the Registration Act. Minutes of the House Judiciary Committee, Feb. 26, 1993. The dissent views this as an intent to require registration only for the more serious, felony crimes. Another explanation is that the catch-all provision was to apply to the misdemeanors, as well as the deleted nonsex crimes. But the point is that the legislative history does not inform us as to the legislature's intent with respect to the interaction between subsections (c)(4) and (c)(14). Accordingly, we turn to the rule of lenity for further guidance.

As a general rule, criminal statutes must be strictly construed in favor of the defendant. *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008). Any reasonable doubt as to the meaning of the statute is decided in favor of the accused, subject to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Jackson*, 291 Kan. 34, 40, 238 P.3d 246 (2010). See also *State v. Bonner*, 290 Kan. 290, 296, 227 P.3d 1 (2010) (stating that strict construction "simply means that the court reads words with their ordinary meaning," and then decides any reasonable doubt in favor of the accused).

The Court of Appeals majority cites to *Paul*'s caveat that the rule of strict construction of criminal statutes "is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent." *Coman*, 42 Kan. App. 2d at 596 (citing *Paul*, 285 Kan. at 662). It interprets that constraint as meaning that "[t]here is no cause to apply the rule of lenity where there is a reasonable and sensible judicial interpretation that effects legislative design." *Coman*, 42 Kan. App. 2d at 597. We disagree with that summary dismissal of the rule of lenity in this case for two reasons.

First, the majority presumes that its interpretation is the one that will effect legislative design. If, in fact, the legislature really

intended that the provisions in K.S.A. 22-4902(a)(5)(B) and (c)(4) meant that there would be no registration requirement for two consenting adults over age 18 who were involved in a homosexual relationship, then the majority's interpretation does not comport with *Paul's* requirement "to effect legislative design and intent." 285 Kan. at 662.

Next, the majority misconstrues the constraint on the rule of lenity. The caveat simply means that the statutory interpretation favoring the accused cannot be unreasonable or nonsensical. In other words, there must be a *reasonable* doubt as to a criminal statute's meaning before the rule of lenity comes into play. The majority appears to suggest that if its interpretation of the statute is reasonable and sensible, then it can ignore the rule of lenity, even if the accused's statutory interpretation is also reasonable and sensible. That application of the rule directly contradicts the whole concept of lenity, and we unequivocally reject it. If, as here, there are two reasonable and sensible interpretations of a criminal statute, the rule of lenity requires the court to interpret its meaning in favor of the accused.

To summarize, we hold that a person who commits misdemeanor criminal sodomy as defined in K.S.A. 21-3505(a)(1) is not required to register as a sex offender under the provisions of either K.S.A. 22-4902(c)(4) or (c)(14). Rather, the provisions of K.S.A. 22-4902(a)(5)(B) govern when a person who has violated K.S.A. 21-3505(a)(1) must register under KORA. Here, the defendant was not required to register, and the district court erred in so ordering.

Reversed.

MORITZ, J., not participating.
DONALD R. NOLAND, District Judge, assigned.